**MCI WORLDCOM COMMUNICATIONS, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 02–1011C.

United States Court of Federal Claims.

Oct. 17, 2003.

Kevin P. Mullen, Piper Rudnick, Washington, D.C., for plaintiff.

William K. Olivier, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

HODGES, Judge.

MCI WorldCom seeks reimbursement for certain surcharges arising from its contract with the General Services Administration for telecommunications services. Plaintiff also claims that GSA made a constructive change to the contract. MCI filed a partial motion for summary judgment and defendant filed a cross-motion. We grant defendant's cross-motion for summary judgment.

## BACKGROUND

The General Services Administration issued a Request for Proposals in May 1997 for a telecommunications contract known as FTS 2001. The contract's purpose was to provide a "transparent, flexible, and efficient" communications system for the Government. The contract also extended coverage to defendant's authorized contractors, to agency-sponsored universities, and to other organizations defined in the contract. The contract required "management, support, maintenance, design, and engineering services" related to the system. GSA awarded the contract to MCI WorldCom in December 1999.

Plaintiff's contract to furnish communication facilities for the Government subjected it to certain fees and surcharges for which MCI seeks reimbursement. The issues in this case are (1) whether defendant is responsible for such fees and surcharges; and (2) whether defendant's requirements under the contract were a constructive change.

## DISCUSSION

The Government issued a Request for Proposals for the FTS 2001 system in May 1997. Defendant structured the bidding process so that offerors would disclose in one schedule all charges for which they expected reimbursement. The contract excepted certain government-imposed taxes and special assessments. *See* Section B.1.2. Defendant required that the offerors' prices conform to a particular schedule, and warned that "price elements not included in the defined format and structure are not permitted. . . ." Section B.1.1. Prices that offerors did not include properly in price tables "will be . . . provided at no cost to the Government, except as otherwise provided for in this contract." *Id.*

The contract incorporates by reference various documents related to the project and to contract negotiations. Plaintiff's Price Proposal is one such document: "The unit prices for services and features . . . (as defined in the RFP Section B pricing tables) are exclusive of applicable taxes, [MDE0001] duties, and surcharges as set forth below . . . . The rates shown are provided as examples; they are not fixed and may change from time to time." Plaintiff's Price Proposal, Section B.1.2. Plaintiff argues that MCI is entitled to reimbursement for increased surcharges because of its disclosure that the rates may change.

### A.

■ The contract excluded government-imposed taxes and similar charges. Government-imposed taxes were "Federal, state, or local taxes, non-domestic taxes and duties in effect that the taxing authority is imposing and collecting on the transactions or property covered by this contract." Section B.1.2. "Similar charges" included Federal Universal Service Fund charges and Federal Pre–Subscribed Inter–Exchange Carrier Charges. *See* Section H.29. The contract excepted only these taxes and charges from its requirement that the Price Proposal include all costs that the offerors expected to be reimbursed. Plaintiff argues that defendant should none-

theless reimburse certain international surcharges and charges assessed by pay phone carriers because they were "outside MCI's control ... [and] subject to change in the future."

We cannot find authority for this assertion in the contract. Plaintiff's argument apparently is that (1) government-imposed taxes are outside MCI's control, (2) such taxes are allowable under the contract, and (3) defendant should reimburse all charges that MCI cannot control. The contract does not contain provisions exempting MCI from unavoidable charges, out of control charges, or charges that are subject to change in the future.

### B.

■ The contract incorporated MCI's Price Proposal by reference. Plaintiff quotes the Proposal in its brief as follows: "The unit prices for services and features (as defined in the RFP Section B pricing tables) are exclusive of applicable taxes, [MDE0001] duties, and surcharges as set forth below .... The rates shown are provided as examples; *they are not fixed and may change from time to time.*" Plaintiff's Price Proposal, Section B.1.2 (emphasis added). Plaintiff argues that the highlighted phrase authorized increased rates to account for the surcharges at issue in this case. However, the contract authorized increased rates to cover taxes and similar charges imposed by governments. *See* Plaintiff's Price Proposal, Section B.1.2.[1] The costs at issue in this case are not taxes but surcharges imposed by private carriers.

1. The complete section reads as follows:
"The unit prices for services and features (as defined in the RFP Section B pricing tables) are exclusive of applicable taxes, [MDE0001] duties, and surcharges as set forth below. In the event the Government provides MCI WorldCom with a duly authorized exemption certificate, MCI WorldCom agrees to exempt the Government in accordance with law. *Tables 1.0–2 and 1.0–3 provide a separate itemized list of taxes that will be included in monthly invoices, including the name of the tax, jurisdiction by name, and applicable tax rate.* The rates shown are provided as examples; they are not fixed and may change from time to time." Plaintiff's Price Proposal, Section B.1.2 (emphasis added).

■ The contract also incorporated plaintiff's offer of year-end percentage discounts to GSA. *Id.* These discounts are based on MCI's net revenue, which plaintiff calculated by excluding "taxes and/or tax-like surcharges." *Id.* Plaintiff claims that pay phone charges and international fees are "tax-like surcharges." Charges or surcharges other than those imposed by governments are costs of doing business for which the contractor was responsible. This is true irrespective of whether the charges are "tax-like."[2]

### C.

■ Plaintiff argues that the Government's use of international mobile telephone service is a constructive change to the contract that entitles MCI to an equitable adjustment under the Changes Clause. *See* 48 C.F.R. § 52.243–1 (2003). Mobile telephones employ Cellular Voice Service, which the contract listed as "optional." *See* Section C.2.5.1. The contract anticipated that the Government eventually would want such a service to "enable users to make full-duplex switched voice telephone calls using wireless terminals." *Id.* GSA has modified the contract to add several services but it has not added Cellular Voice Service.

Defendant agrees that the parties did not modify the contract to add Cellular Voice Service but it contends that the contract required plaintiff to receive "non-domestic off-net call terminations." "Off-net" means that the person or location receiving the call has not subscribed to any service offered by MCI. *See* Section J.1, Glossary of Terms. "On-net locations" have subscribed to one or

2. MCI filed a tariff with the FCC, proposing a rate increase to cover pay phone surcharges "required by governmental *or quasi-governmental authorities ....*" (emphasis added). FCC Tariff 4, Page 9, Section I (October 2, 1999), GSA argued that the contract did not address quasi-governmental authorities or permit reimbursement of pay phone surcharges. It noted that the *parties discussed surcharges during negotiations and agreed that "any consideration of new surcharges is on a case by case basis and acceptance is not guaranteed."* (emphasis added). Defendant concluded, "MCI does not have the authority, under this contract, to impose these 'surcharges.'" Plaintiff revised its rates to remove the proposed surcharges.

more services provided by the FTS 2001 contractor. *Id.*

MCI's obligation to provide service depends on whether an employee makes the call from an on-net location. The contractor must absorb charges that apply to calls made by government employees or from government locations, even if the receiving line is "off-net." *See* Section B.2.1(h) ("The cost of terminating access at the non-domestic off-net location is included in the transport price.").

Plaintiff argues that service to international mobile phones is neither on-net nor off-net, and therefore service is not required by the contract. However, a call that is not made to or from an on-net location necessarily is made off-net. An on-net location uses MCI's service; all other locations are off-net by definition. *See* Section J.1, Glossary of Terms.

Plaintiff emphasizes the definition of "location" in the contract: "A physical space, such as a building or a room. A physical point where the FTS 2001 contractor delivers service to a user." *Id.* Plaintiff contends that mobile phones are not "tethered to or associated with a particular physical space, such as a building or a room."

The contract covers "users" of telecommunications services. A user is a government employee or someone using MCI's services on government premises. The FTS 2001 contractor must deliver service to a user, whether the user is a caller or the recipient of a call. The contract does not limit services to calls between or among government locations or government employees. It does not exclude calls from users to wireless mobile units. The contract requires that MCI provide services to on-net and off-net locations, whether they be domestic or non-domestic. *See* Sections C.2.1.3 and C.2.1.4.

Calls between on-net locations are covered by the contract. Calls from on-net to off-net or from off-net to on-net locations are covered. Calls between off-net locations do not involve MCI and are not at issue in this case. Plaintiff's interpretation would limit the contract's coverage to telecommunications services between government buildings. The Government's insistence on the terms of its bargain with MCI is not a constructive change to the contract.

## CONCLUSION

Defendant points out that plaintiff is an experienced contractor in the telecommunications field. MCI could have anticipated international access surcharges, and should have anticipated pay phone surcharges as well. In fact, defendant asserts that carriers imposed pay phone surcharges before plaintiff signed the FTS 2001 contract. Whether plaintiff could have or should have anticipated pay phone or international surcharges are not issues in construing this contract, however. MCI assumed the risks of escalating charges unless it listed such charges in the Pricing Schedule of this fixed-price contract.

According to MCI, the disputed surcharges are "similar to taxes in that new and increased surcharges can be imposed upon the contractor over the life of the FTS 2001 Contract . . . . [P]rinciples of equity and fairness require GSA to cover such charges for the Government FTS 2001 services." The contract does not allow reimbursement for charges that are similar to taxes unless plaintiff lists them specially or the contract so provides. Principles of equity and fairness do not prevent GSA from enforcing the contract by its negotiated terms.

Defendant's motion for summary judgment is GRANTED. Plaintiff's motion for partial summary judgment is DENIED. The parties will advise the court by October 24 whether we should schedule additional proceedings.